DECISION
Before this Court is an appeal from a decision of the Exeter Zoning Board of Review, sitting as the Board of Appeal (hereinafter "Zoning Board"), reviewing a decision of the Exeter Planning Board (hereinafter "Planning Board"). The appellant, Richard Siciliano, Jr. (hereinafter "appellant" or "Siciliano"), appeals the Zoning Board's decision affirming the Planning Board's denial of his application for preliminary plan approval of a two (2) lot minor subdivision. Jurisdiction of this appeal is pursuant to G.L. 1956 § 45-23-71.
 Facts and Travel
Richard Siciliano, Sr. and his wife, Jena Siciliano, own two lots which are recorded in the Town of Exeter (Town) as Assessor's Plat 83, Block 10, Lots 7 and 8, and are zoned as residential (RE-2). Lot 7 was purchased in 1969, has seventy-five (75) feet of road frontage, and consists of 8,550 square feet. Lot 8 was purchased in 1983, has seventy-five (75) feet of road frontage, and consists of 10,012 square feet. Pursuant to Article III, Sec. 3.5 (2) of the Zoning Ordinances of the Town of Exeter, because the lots are abutting and, "held in the same ownership," they were deemed merged and collectively have 150 feet of frontage and consist of 18,562 square feet.[1] The lots are located in the Boone Lake area of the Town. According to § 7.2.1.4 of the Town's Comprehensive Plan, adopted by the Town Council in July of 1994, such area has been identified as a medium density use area requiring a two (2) acre minimum lot size.[2]
In accordance with § 45-23-61(1) and the Exeter Zoning Ordinances, the appellant applied to the Planning Board for preliminary plan approval of a minor subdivision seeking to subdivide the lots described herein. Section 45-23-61(1) provides:
 "Where an applicant requires both a variance from the local zoning ordinance and planning board approval, the applicant shall first obtain an advisory recommendation from the planning board, as well as conditional planning board approval for the first approval stage for the proposed project, which may be simultaneous, then obtain conditional zoning board relief, and then return to the planning board for subsequent required approval(s)."
The appellant's application for preliminary plan approval was denied by the Planning Board at its meeting on September 23, 2002. The Planning Board's Record of Decision, filed on September 30, 2002, states: "[I]n denying this application, the Board found the proposal to be inconsistent with the Exeter Comprehensive Plan of [sic] Section 3.5.1 of the Exeter Subdivision Regulations."
The appellant subsequently filed an appeal of the Planning Board's Record of Decision to the Zoning Board, sitting as the Board of Appeal. A public hearing was held on April 14, 2003. At the Zoning Board hearing, the appellants presented two reasons for their appeal: "[O]ne is that we feel that the Planning Board ignored the second half of [sic] 3.1, which says, `Or hassatisfactorily addressed the issues where there may beinconsistencies', and second of all, it is difficult or impossible to know what the decision is based on, because the decision does not contain the findings of fact." (Tr. at 24.)[3] A written decision, reflecting the Zoning Board's four to one denial of the appeal was received for record by the Town on April 24, 2003.[4] The Zoning Board's denial of the appeal from the decision of the Planning Board resulted in the affirmance of the September 23, 2002 Planning Board decision. This appeal was timely filed thereafter.
 Standard of Review
Rhode Island General Laws, § 45-23-70, governs the standards of administrative appellate review regarding subdivisions of land within cities and towns, and § 45-23-71 governs appeals thereafter to Superior Court from decisions of a board of appeal. Section 45-23-70(a) provides:
 "As established by this chapter, in instances of a board of appeal's review of a planning board or administrative officer's decision on matters subject to this chapter, the board of appeal shall not substitute its own judgment for that of the planning board or the administrative officer but must consider the issue upon the findings and record of the planning board or administrative officer. The board of appeal shall not reverse a decision of the planning board or administrative officer except on a finding of prejudicial procedural error, clear error, or lack of support by the weight of the evidence in the record." (emphasis added).
Subsection (c) of § 45-23-71 provides:
 "The court shall not substitute its judgment for that of the planning board as to the weight of the evidence on questions of fact. The court may affirm the decision of the board of appeal or remand the case for further proceedings, or may reverse or modify the decision if substantial rights of the appellant have been prejudiced because of findings, inferences, conclusions or decisions which are:
 (1) In violation of constitutional, statutory, ordinance or planning board regulations provisions;
 (2) In excess of the authority granted to the planning board by statute or ordinance;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
Pursuant to § 45-23-71, judicial review of planning board decisions is not de novo. Munroe v. Town of E. Greenwich,733 A.2d 703, 705 (R.I. 1999) (citing Kirby v. Planning Bd. ofReview of Middletown, 634 A.2d 285, 290 (R.I. 1993)). The statute authorizes the Superior Court to review such decisions utilizing the "`traditional judicial review' standard that is applied in administrative-agency actions." Id. Therefore, the Superior Court does not consider the credibility of witnesses, weigh the evidence, or make its own findings of fact. Id.
(citing Lett v. Caromile, 510 A.2d 958, 960 (R.I. 1986)). Rather, "its review is confined to a search of the record to ascertain whether the board's decision rests upon `competent evidence' or is affected by an error of law." Id. (quotingKirby, 634 A.2d at 290). The Superior Court's appellate authority to review a decision of a board of appeal, pursuant to § 45-23-71(b), is limited to "the record of the hearing before the planning board. . . ."
"A municipal board, when acting in a quasi-judicial capacity, must set forth in its decision findings of facts and reasons for the action taken." Sciacca v. Caruso, 769 A.2d 578, 585 (R.I. 2001) (quoting Irish P'ship v. Rommel, 518 A.2d 356, 358 (R.I. 1986)). Such findings are necessary so that such decisions may be susceptible to judicial review, and therefore the findings must be "factual rather than conclusional, and the application of legal principles must be something more than the recital of a litany." Bernuth v. Zoning Bd. of Review of the Town of NewShoreham, 770 A.2d 396, 401 (R.I. 2001) (quoting Irish P'ship,518 A.2d at 358-59)). Finally, when the board fails to state its findings of fact, "the [C]ourt will not search the record for supporting evidence or decide for itself what is proper in the circumstances." Id. (quoting Irish P'ship, 518 A.2d at 359).See also Kaveny v. Town of Cumberland Zoning Bd. of Review,875 A.2d 1 (R.I. 2005).
 Analysis A. The Comprehensive Plan for the Town of Exeter
The Town contends that the Town Council adopted its Comprehensive Plan at its meeting of July 5, 1994. The Town presented a certificate signed by the Town Clerk attesting to such resolution, as well as, a certificate from the State of Rhode Island approving the Plan as of March 3, 2004. The resolution of the Town Council provides in pertinent part: "motion . . . to adopt the Comprehensive Plan as amended, and said adoption shall become effective upon the date of acceptance of the submitted plan by the Director of the Rhode Island Department of Administration." The appellant argues that at the time of his application to the Planning Board, the Comprehensive Plan had not been effectively adopted, as evidenced by the State certificate dated March 3, 2004, and thus, the denial of his application was unwarranted.
The adoption of comprehensive plans is governed by § 45-22.2-8
of the General Laws. Subsection (c) of § 45-22.2-8 provides,
 "A comprehensive plan is adopted, for the purpose of conforming municipal land use decisions and for the purpose being transmitted to the director for state review, when it has been enacted by the legislative body of the municipality pursuant to the manner provided for the adoption of ordinances in the municipality's legislative or home rule charter. All ordinances dealing with the adoption of or amendment to a municipal comprehensive plan shall contain language stating that the comprehensive plan ordinance or amendment shall not become effective for the purposes of guiding state agency actions until it is approved by the state of Rhode Island pursuant to the methods stated in this chapter, or pursuant to any rules and regulations adopted pursuant to this chapter. The comprehensive plan of a municipality shall not take effect for purposes of guiding state agency actions until approved by the director, comprehensive plan appeals board, or the Rhode Island supreme court." (emphasis added).
The language contained in the Town's resolution merely complies with the statutory guidelines provided above. The Town adopted the Comprehensive Plan in 1994, with regard to municipal land use decisions; however, such plan did not "take effect for purposes of guiding state agency actions until approved by the director," in 2004. Therefore, at the time the Planning Board denied the appellant's application, an adopted comprehensive plan was in effect for purposes of guiding the actions of the Planning Board, even if not effective for the purpose of guiding state agency actions. Accordingly, the Planning Board acted permissibly in its consideration of the application and whether the application conformed to the Comprehensive Plan.
 B. The Decision of the Planning Board and the Zoning Board of Review, sitting as the Board of Appeal.
In the appeal before this Court, the appellant argues that both the decision from the Planning Board and the affirmance by the Zoning Board fail to meet the required standard set forth in §45-23-60(b), which provides: "[E]xcept for administrative subdivisions, findings of fact must be supported by legally competent evidence on the record which discloses the nature and character of the observations upon which the fact finders acted."
In support of its Decision, the Planning Board cited to section 3.5.1 of the Town's ordinances which provides in pertinent part:
 "For all development and subdivision applications subject to these regulations the planning board, or its designated agents, shall address each of the general purposes stated in section 1.5, and shall make positive findings on the following standard provisions as part of the proposed project's record, prior to approval. If a negative finding for any of these standards is made, the planning board shall have grounds for denial of the project design:
 (1) The proposed development is consistent with the town's comprehensive plan and/or has to the board's satisfaction addressed the issues where there may be inconsistencies;. . . ." (emphasis added).[5]
In this instance, the Planning Board's Record of Decision is entirely conclusory, finding the applicant's proposal "to be inconsistent with the Exeter Comprehensive Plan of [sic] Section 3.5.1 of the Exeter Subdivision Regulations," presumably because the proposed subdivision of the merged lots would create two substandard lots under the two-acre zoning minimum of the Comprehensive Plan. However, Section 3.5.1 of the Town's Ordinances requires that if the Planning Board finds the application inconsistent with the Comprehensive Plan, specific findings must be made as to whether any inconsistencies have been satisfactorily addressed. Notwithstanding the applicant's attempt at the Planning Board meeting to address the inconsistencies,[6] there are absolutely no findings made by the Planning Board as to why the applicant's presentation was not satisfactory. In the absence of any such findings, there is nothing upon which the Zoning Board, sitting as the Board of Appeal, or this Court, can analyze relative to the propriety of the Planning Board's decision.
The fact that the Zoning Board, sitting as the Board of Appeal, attempted to make "findings" at the appellate level does not cure the deficiency of the Planning Board's Record of Decision. A board of appeal, in reviewing a decision of a planning board, does not create a new record or make its own findings of fact. Rather, its review is limited to the record made at the planning board hearing, and the findings and conclusions made therein.[7]
In addition, this Court's jurisdiction, as created by statute, is limited to considering the record of the hearing before theplanning board, even if there was an intervening appeal to a board of appeal. See § 45-23-71(b) and (c). Accordingly, attempts at curative "fact finding" by the board of appeal is unavailing.
 Conclusion
Because the Planning Board's Record of Decision was conclusory in nature and contained no findings of fact on issues pertinent to the application, the Court finds, pursuant to its authority under § 45-23-71(c), that the Planning Board acted upon unlawful procedure, inconsistent with its statutory authority, and abused its discretion in denying the application. Accordingly, the Court will remand the case to the Planning Board for further proceedings consistent with this decision. The parties shall submit a form of order for entry by the Court.
[1] Article III, Sec. 3.5 (2). Merger of abutting nonconforming lots. If two or more abutting nonconforming lots are held in the same ownership at any time after May 2, 1977, such lots shall be combined for the purposes of this ordinance in order to conform or more nearly conform to any of the dimensional requirements of this ordinance for the district in which the lots are located, and such lots shall not be sold separately.
[2] § 7.2.1.4 Medium Density (MD) — 2 Acres. Given the recommended changes discussed to date, there are four areas of Medium Density use areas identified in the town. They include an area adjacent to Arcadia Village just over the town line from Richmond, a second area around Boone Lake, a third area between I-95 and Route 3 to the rear of the current business zone and finally a fourth area extending outside the Queens River Aquifer between Mail Road and Wolf Rock Road. In all cases the proposed land use designation matches existing land use and zoning.
[3] Zoning Bd. of Review, sitting as The Bd. of Appeals, In Re: The Appeal of Richard Siciliano, Transcript of April 14, 2003, 24 (hereinafter "Tr.").
[4] The actual transcript of the Zoning Board, sitting as an appellate panel, shows that the public hearing at which the appeal was considered concluded on April 14, 2003, at which time the Board voted four to one to deny the appeal. (Tr. at 38.) Thereafter, on April 23, 2003, the Chairman, in a three page letter, enumerated sixteen "findings of fact" and, based thereon, articulated the following "conclusions":
 (1) "The Appellant's project design is not consistent with the Exeter Comprehensive Plan because Lots 7 8 are located in a RE-2 district which the Comprehensive Plan designates as minimum 2-acre zoning, and therefore, creates a negative finding under § 3.5.1;
 (2) The Appellant's project design does not conform to the standards and provisions of the Exeter Zoning Ordinance because Lots 7 8 do not satisfy the minimum acreage and road frontage requirements set forth in § 2.42, and therefore, creates a negative finding under § 3.5.2;
 (3) A subdivision of Lots 7 8 would create two even more substandard lots in contravention of the merger provision;
 (4) No prejudicial procedural error, clear error, or lack of support by the weight of the evidence in the record exists for the Planning Board's denial of Appellant's application for minor subdivision."
[5] Section 3.5(1) is consistent with the statutory procedure which sets forth the required findings to be included in all local regulations for subdivision approvals. See § 45-23-60.
[6] The appellants argue that they have satisfactorily addressed such "inconsistencies" in their application, in accordance with Section 3.5(1) of the subdivision regulations, by offering evidence of ISDS compliance and engineering data concerning drainage calculations. The appellants regard their proposal as reasonable in light of the size of their lots and in keeping with the character of that neighborhood, and further argued:
 ". . . looking at the character of the area, there is not one lot in Boone Lake that is two acres; not one; not even close, and most of the lots in Boone Lake are smaller than these lots. These two lots are among the larger of the lots along Boone Lake, especially along the water front. So the comprehensive plan creates a situation, if you try to strictly adhere to the zoning in Boone Lake, there is not one lot that complies with the comprehensive plan in Boone Lake." (Tr. at 17-18.)
[7] Section 45-23-70(a) provides in pertinent part: ". . . the board of appeal shall not substitute its own judgment for that of the planning board or the administrative officer but must consider the issue upon the findings and record of the planning board or administrative officer."